UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CHAPTER 11 |
| ZERGA PHIN-KER LP, | § § | |
| DEBTOR. | § § § § | CASE NO. 15-42087-BTR (Complex Case Designation Requested) |

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL ORDERS (1) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING, (2) GRANTING LIENS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, AND (4) SETTING AND PRESCRIBING FORM AND MANNER OF NOTICE FOR FINAL HEARING**

TO THE HONORABLE CHIEF JUDGE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE:

Zerga Phin-Ker LP (the "Debtor") hereby moves (the "Motion") on an emergency basis for entry of an interim order (the "Interim Order," a copy will be provided in advance of the interim hearing) and a final order (the "Final Order"): (1) authorizing the Debtor to obtain post-petition financing ("DIP Financing") pursuant to Section 364 of Title 11 of the United States Code (the "Bankruptcy Code") from U.S. Bank National Association, solely in its capacity as Indenture Trustee[1], and acting at the direction of the holder of the Bonds ("DIP Lender"); (2) granting certain liens and super-priority administrative expense status to the post-petition lender; (3) modifying the automatic stay; and (4) in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and all applicable local bankruptcy rules, scheduling a final hearing (the "Final Hearing") and approving notice with respect thereto. In support of this Motion, the Debtor respectfully states to the Court as follows:

---

[1] Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the *Affidavit of Rose Rabon in Support of the Debtor's Chapter 11 Petition and Requests for Expedited Relief* (the "Rabon Affidavit") filed concurrently with this Motion as docket number ___.

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 1

# I.
# BANKRUPTCY RULE 4001 CONCISE STATEMENT

1. By this Motion, the Debtor requests:

   a. Entry of an Interim Order and a Final Order authorizing the Debtor:

      i. To obtain secured DIP Financing pursuant to Sections 363 and 364 of the Bankruptcy Code from the DIP Lender;

      ii. To obtain an initial interim post-petition loan pursuant to the terms and conditions of an Interim Order in an amount not to exceed $450,000[2] covering the interim period from the Petition Date to January 17, 2016 (the "Interim Period"). The Debtor will provide a draft Interim Order prior to the interim hearing on the Motion;

      iii. To obtain further advances after the Interim Period by entering into a financing agreement (the "DIP Agreement") with the DIP Lender. Such DIP Agreement shall be negotiated between the Debtor and DIP Lender and shall be consistent with the terms of the DIP Term Sheet[3,4] attached hereto as Exhibit "A." The DIP Term Sheet contains the major terms of the DIP Financing but other terms are currently still under negotiations; and,

      iv. To grant liens and super-priority claims to and on behalf of and for the benefit of the DIP Lender in certain Collateral (defined hereinbelow) to secure the DIP Financing.

   b. In accordance with Bankruptcy Rule 4001(c)(2), that this Court schedule a final hearing on or prior to January 15, 2016 ("Final Hearing") on the Motion and approve notice with respect thereto.

---

[2] The final amount of the interim loan is subject to final Bondholder approval which had not been obtained as of the filing of the Motion. The Debtor continues to work with counsel for the Indenture Trustee to obtain the approval.

[3] Capitalized terms relating to the DIP Facility not otherwise defined herein shall have the same meaning given to them in the DIP Term Sheet.

[4] The DIP Term Sheet states the initial interim post-petition loan is $300,000. Upon further discussions between the DIP Lender and the Debtor, the amount was changed to $450,000 which, as stated in footnote 2 hereinabove, is pending the approval of the Bondholders.

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 2

2. The material terms of the proposed DIP Financing which the parties have agreed to are as follows:

    a. <u>Borrower</u>: The Debtor, Zerga Phin-Ker LP.

    b. <u>DIP Lender</u>: U.S. Bank National Association, solely in its capacity as Indenture Trustee, and acting at the direction of the holders of the Bonds.

    c. <u>DIP Facility</u>: A senior secured first priority interim DIP facility for the first five week interim period consisting of up to $450,000, with a final maximum amount to be agreed to by the Debtor and the DIP Lender in advance of the Final Hearing (the "DIP Facility"). The DIP Facility shall be paid from the Construction Fund and/or Working Capital Fund (collectively, the "Fund Accounts," and together with all of the other accounts held by the Indenture Trustee under the Bond Indenture and the Master Trust Indenture, the "Trust Estate Funds") as the DIP Lender deems appropriate, in its sole discretion, on any distributions made under the DIP Facility. Any principal amounts allocated to funds in the Fund Accounts that are advanced under the DIP Facility shall bear interest solely at the DIP Interest Rate provided for herein and shall not bear or be subject to any interest chargeable under the Bond Documents. For the avoidance of doubt, any interest amounts allocable to funds in the Fund Accounts that are advanced under the DIP Facility shall not reduce the Debtor's Pre-Petition Obligations

    d. <u>Maturity Date</u>: The Debtor shall repay any outstanding advances and loans under the DIP Facility on the earliest of: (a) April 30, 2016; (b) the occurrence of an Event of Default, (c) the effective date of any plan of reorganization or liquidation; (d) the date of the acceleration of any outstanding DIP Obligations (defined below); (e) entry of an order reversing in any respect any DIP order; (f) the conversion of this Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (g) the appointment of a trustee or an examiner with expanded powers; and (h) the dismissal of the Chapter 11 case.

    e. <u>Chief Restructuring Officer</u>: The Debtor shall retain during the pendency of its Chapter 11 case a chief restructuring officer acceptable to the DIP Lender ("CRO"). The terms of the engagement of the CRO, including without limitation, the expanded powers and authorities granted to the CRO, must be acceptable to the DIP Lender in its sole discretion.

    f. <u>Interim Budget</u>: The Debtor has prepared and delivered a 5-week cash flow budget, including projected cash receipts, operating disbursements, non-operating disbursements and cash balances. The 5 week budget is attached hereto as Exhibit "B". The DIP Lender has only agreed to the budget for the initial five week Interim Period, and reserves the right to approve or disapprove of any budgeted items after the Interim Period, and in connection

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 3

with the Final Hearing. The Debtor agrees to work with the DIP Lender in advance of any interim or final hearing to ensure that such subsequent budget(s) (generally, "Budget") shall be in form and substance acceptable to the DIP Lender. During the term of the DIP Facility, the Borrower agrees to deliver updates and weekly variance reports to such Budget, each in form reasonably acceptable to the DIP Lender. The Debtor shall be entitled to a 10% per line item variance, not to exceed 5% in the aggregate, but otherwise shall not be permitted to deviate from the Budget without the prior written consent of the DIP Lender.

g. Restrictions on Use of Funds: No portion of the DIP Facility or the Collateral (defined below) are to be used by any party or professional to: (a) challenge the validity, perfection, priority, extent or enforceability of the DIP Facility, the Deed of Trust or the DIP Liens or the adequate protection to be provided to the Indenture Trustee; (b) pursue any other claims against the DIP Lender in connection with the DIP Facility, including any appeal of the DIP Facility orders; (c) attempt to compel disbursement of any of the Trust Estate Funds, or pursue any claim that some or all of the Trust Estate Funds constitute property of the Debtor's estate; or (d) pursue any litigation against the DIP Lender or its respective affiliates.

h. Interest: Except as otherwise provided, the interest rate charged in respect of the DIP Loans shall be 11% per annum (the "DIP Interest Rate").

i. Default Interest Rate: At a rate per annum (computed on the basis of the actual number of days elapsed over a 360-day year) equal to 2% percent above the interest rate(s) otherwise applicable.

j. DIP Collateral: To secure all obligations of the Borrower under the DIP Facility, the DIP Lender will receive a fully perfected first priority security interest in and to all prepetition and post-petition assets and properties (including all rents, offspring and profits generated therefrom) of the Debtor, whether now owned or hereafter acquired (collectively, the "Collateral"), and in the Final Order, seek to include chapter 5 causes of action and any proceeds therefrom. All obligations of the Debtor under and with respect to the DIP Facility (the "DIP Obligations") will be secured (i) a first priority lien (subject to any permitted liens) senior to all prepetition liens and security interests in and to the Collateral except the carve out for estate professional fees as provided in the Budget (the "Carve Out"), and (ii) a super-priority administrative expense claim (the "Superpriority Claim"). Prepetition Obligations under the Bond Documents shall not be rolled-up as part of the DIP Facility.

k. Adequate Protection: As adequate protection to the Indenture Trustee (on account of the Bond Documents), the Indenture Trustee shall be granted (a) an allowed, superpriority administrative expense claim, subject and subordinate

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 4

only to the DIP Lender's claims under the DIP Facility and the Superpriority Claim; and (b) subject to entry of a final DIP order, a valid, perfected, priming, security interest in and liens on all of the Debtor's now owned and hereafter acquired, created or arising Collateral subject only to the DIP and the Carve Out.

l. <u>Binding Stipulations</u>: In addition, each DIP Facility Order shall contain the following stipulations (and any other stipulations required by the DIP Lender under the DIP Agreement and related documents): (a) the Pre-Petition Liens are valid, binding, perfected, enforceable liens; (b) the Pre-Petition Obligations (under and in respect of the Bond Documents) constitute legal, valid, and binding obligations of the Debtor; (c) the Trust Estate Funds and all amounts therein belong exclusively to the trust estates established under the Bond Indenture and under the Master Indenture, and are not property of the Debtor's estate; and (d) all statements set forth in Exhibit A to the DIP Term Sheet.

m. <u>Expenses</u>: The Debtor shall pay all reasonable fees and disbursements of the DIP Lender's counsel and other professionals with respect to the Debtor's Chapter 11 case, periodic, field audits, monitoring of assets, other miscellaneous disbursements, and all out-of-pocket costs and expenses of the DIP Lender in connection with the DIP Facility and the Chapter 11 case.

n. <u>Affirmative and Negative Covenants</u>: Usual and customary for facilities of this nature.

o. <u>Events of Default</u>: Usual and customary for facilities of this nature.

p. <u>Financial Reporting</u>: Usual and customary for facilities of this nature.

q. <u>Remedies</u>: Usual and customary for facilities of this nature.

## II.
## STATUS OF THE CASE AND JURISDICTION

3. On November 20, 2015 (the "Petition Date"), the Debtor commenced this case by filing voluntary petitions for relief under Chapter 11 the Bankruptcy Code. The Debtor has continued in the possession of its property and is managing its business as Debtor and Debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request for a trustee or examiner has been made and no creditors' committee has yet been appointed in this case. This Court has jurisdiction over this Motion under 28 U.S.C.

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 5

§§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief sought herein are Sections 105(a), 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001, 6004, and 9014.

## III.
## BACKGROUND

6. The Debtor is a Texas limited liability company whose principal place of business is in McKinney, Texas. The Debtor is engaged in the acquisition, construction and development of two healthcare facilities located in Longview, Texas. The development is generally known as "Parkview on Hollybrook" and consists of two separate healthcare facilities: an independent living facility (the "IL Facility"), and an assisted living and memory care facility (the "AL Facility", and collectively with the IL Facility the "Facilities").

A more detailed factual background of the Debtor's business and operations, including the events leading up to the filing of this case, is more fully set forth in the *Affidavit of Rose Rabon in Support of the Debtor's Chapter 11 Petition and Requests for Expedited Relief* filed on December 15, 2015 [docket #21], which is incorporated herein by this reference.

## IV.
## RELIEF REQUESTED

7. The Debtor hereby requests entry of an Interim Order, the scheduling of a final hearing, and, after such hearing, the entry of a Final Order granting the following relief, all as more specifically enumerated above in the introductory paragraph of this Motion.

4849-2171-0124.2

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 6**

A. **The Debtor's Need for Financing.**

8. The Debtor requests authority to obtain post-petition financing from the DIP Lender. The requested relief is necessary for the Debtor to continue its operations, not only to preserve value of the assets of the estate but to use the funds to significantly increase the value of the Facilities. The Facilities upon completion of construction would have significantly higher value than they are in their current state. So long as construction of the Facilities remains incomplete, the Debtor is without means to generate revenue.

9. With the Facilities at their current state of incomplete construction, the Debtor is unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a super-priority administrative expense claim pursuant to Section 364 of the Bankruptcy Code. The Debtor has also been unable to obtain financing in the form of credit secured by liens that are junior to existing liens on property of its estate pursuant to Sections 364 of the Bankruptcy Code. For the foregoing reasons, the Debtor is need for financing.

B. **Summary of Relief Sought.**

10. The Debtor seeks authorization to obtain, on an emergency basis, secured, super-priority post-petition financing from the DIP Lender.

11. Subject to the terms and conditions that will be set forth an Interim Order and the DIP Term Sheet, the DIP Lender is willing to provide the DIP Facility on an interim basis. The DIP Lender has agreed to loan an initial amount covering a five-week period Interim Period in the aggregate amount of up to $450,000. As a condition of providing the DIP Facility, the DIP Lender is requiring the Debtor to retain a CRO who is acceptable to the DIP Lender. During the Interim Period, the CRO shall analyze options with respect to the completion of the Facilities

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 7

and make recommendations as to the amount of additional funds to be advanced to the Debtor under the DIP Facility. The DIP Lender has already advanced approximately $27,000 for payment to bind casualty insurance for the IL Facility on December 7, 2015. The Debtor and DIP Lender seek to include this advance in the DIP Facility.

12. The DIP Lender has indicated that the firm of CohnReznick LLP, and Chad J. Shandler, a partner at CohnReznick, would be acceptable choices for the roles of the Debtor's Restructuring Advisor and the CRO, respectively. Accordingly, concurrent with the filing of this Motion, the Debtor is filing an application to employ CohnReznick and designate Mr. Shandler as the Debtor's CRO.

13. To secure the DIP Obligation, the DIP Lender will be granted a perfected first priority security interest in and to the Collateral (the "Post-Petition Liens"). For the Interim Order, the Post-Petition Liens shall not attach to any of the following property: (i) any causes of action, including causes of action or claims pursuant to Sections 544, 545, 547, 548, 550, or 553 of the Bankruptcy Code (the "Avoidance Actions"); and (ii) any monies recovered in connection with the successful prosecution or settlement of Avoidance Actions or any other causes of action held by the Debtor's estate (collectively, the "Avoidance Proceeds"). However, the Debtor is informed that, at the Final Hearing, the DIP Lender intends to seek to (i) include the Avoidance Actions and Avoidance Proceeds as part of its Collateral, and (ii) prime existing liens attached to the Collateral.

14. Additionally the Debtor seeks approval to grant all DIP Obligations administrative priority in accordance with, and allowance of a super-priority claim pursuant to the provisions of Section 364(c), 364(c)(1), and 364(d) of the Bankruptcy Code with priority over all other administrative expenses in the Debtor's Chapter 11 case of the kind specified in, or

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 8

ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 552, 726, 1114, or other similar section of the Bankruptcy Code (the "Superpriority Claim"); provided, however, the Superpriority Claim shall be subject to the Carve Out for estate professional fees as set forth in the Budget and for fees payable to the U.S. Trustee and to the Clerk of the Court.

15. Specifically, the Debtor seeks the entry of interim and final orders authorizing the Debtor to enter into the DIP Facility with the DIP Lender and to use the funds loaned thereunder pursuant to a Budget, which will be updated from time to time, to be approved by the DIP Lender. There will be no "roll-up" of the Indenture Trustee's prepetition claim into a post-petition claim.

16. The Debtor believes that good cause has been shown for the entry of an Interim Order to obtain the DIP Facility pending a Final Hearing on the relief requested herein pursuant to Bankruptcy Rules 4001(c) and (d). The Debtor's need for financing of the type requested herein and as afforded by the Interim Order is immediate and critical. Entry of the Interim Order will allow the Debtor to immediately take steps to protect and preserve the assets of the Debtor's estate from further deterioration, and is in the best interests of the Debtor, its creditors, and its estate.

17. The Debtor further believes that the terms of the financing are fair and reasonable, reflect the Debtor's reasonable exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The interests of the Indenture Trustee in its pre-petition collateral are adequately protected under the terms and conditions of the Interim Order.

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 9

## V.
## BASIS FOR RELIEF REQUESTED

**A.    Approval Under Section 364 of the Bankruptcy Code.**

18.    Section 364 of the Bankruptcy Code allows the Debtor to (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, the Court may authorize the obtaining of credit or the incurring of debt, repayment of which is entitled to super-priority administrative expense status or is secured by a lien on unencumbered property, or a combination of the foregoing.

19.    The Debtor proposes to obtain post-petition financing pursuant to the terms of the DIP Facility, the Interim Order, and the Final Order by providing security interests in and liens on the Collateral pursuant to Section 364 of the Bankruptcy Code. The statutory requirement for obtaining post-petition credit under Section 364 is a finding, made after notice and hearing, that the Debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992) (the debtor must show "by a good faith effort that credit was not available without" the protections of Section 364(c)). Section 364 financing is appropriate when the trustee or debtor-in-possession is unable to obtain unsecured credit allowable as an ordinary administrative claim. *See In re Crouse Group, Inc.*, 71 B.R. 544, 549, *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (secured credit under Section 364(c)(2) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

20.    Courts have articulated a three-part test to determine whether a debtor is entitled to Section 364(c) financing:

    (a)    The debtor is unable to obtain unsecured credit under Section 364(b) (i.e., by allowing a lender only an administrative claim);

    (b)    The credit transaction is necessary to preserve the assets of the estate; and

    (c)    The terms of the transaction are fair, reasonable, and adequate given the circumstances of the debtor and the proposed lender.

*See Crouse Group*, 71 B.R. at 549. Additionally, courts will generally accord significant weight to the necessity of the debtor obtaining post-petition financing in order to remain viable. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

21. As noted above, the need for the Debtor to obtain financing is critical. Further, the evidence at the interim hearing, if necessary, will show that a facility of the type needed in this Chapter 11 case could not have been obtained on an unsecured basis.

**B. <u>The Debtor Does Not Have an Alternative to the DIP Loan and the Interim Order.</u>**

22. If necessary, the evidence at the interim hearing will show that a facility of the type needed in this case could not have been obtained on an unsecured basis. Indeed, the potential sources of a credit facility for the Debtor, obtainable on an expedited basis and on reasonable terms, are practically nonexistent. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re Snowshoe Co.*, 789 F.2d at 1088.

23. A debtor needs only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c). *Id.*; *In re Plabell*, 137 B.R. at 900. Where there are few lenders likely to be able and/or willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom*,

*Anchor Sav. Bank FSB v. Sky Valley*, 99 B.R. 1997, 120 n.4 (N.D. Ga. 1989). Thus, the evidence introduced at the interim hearing will satisfy the requirement of Section 364(c) that unsecured credit was unavailable to the Debtor.

24. As described in the Rabon Affidavit, the feuding among the Debtor's principals caused a deadlock in the Debtor's management, a total halt in construction, and leaving the Facilities unfinished and the Debtor unable to generate revenue. Prior to the Petition Date, the Debtor received inquiries from other parties interested in providing investment funding to finish out the Facilities. However, each such party expressed that investment funds would be forthcoming only if the Debtor's principals can resolve their differences. Only the DIP Lender, who is already familiar with the Debtor's operations, has come forth to offer a post-petition credit facility to meet the Debtor's working capital needs on the terms and within the time frame that the Debtor needs.

### C. <u>Application of the Business Judgment Standard.</u>

25. As described above, the Debtor's has concluded that the DIP Facility offered by the DIP Lender provides the only alternative available under the circumstances. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mit St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *Ames*, 115 B.R. at 38 (in examining requests by a debtor for interim financing, courts apply the same business judgment standard applicable to other business decisions); *In re Simasko Prod Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 12

private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, NA.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

26. In general, a bankruptcy court should defer to a debtor-in-possession's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *See In re Curlew Valley Assoc.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." *Id.*, at 513-14 (footnotes omitted).

27. The Debtor has exercised sound business judgment in determining that a post-petition credit facility is appropriate and has satisfied the legal prerequisites to borrow under the DIP Facility, the DIP Term Sheet, and the Interim Order. The terms of the DIP Facility are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to borrow from the DIP Lender on the secured, administrative super-priority basis described above, pursuant to Section 364 of the Bankruptcy Code, and take the other actions contemplated by the Interim Order as requested herein.

28. The Debtor believes that it could not obtain financing from any other lender on terms more favorable than the DIP Facility offered by the DIP Lender. The Debtor is without any funds to operate its business. The Debtor's management exercised its best business judgment in negotiating the the DIP Facility and the Interim Order that is presently before the Court.

**D.     Request for Modification of the Automatic Stay.**

29. As set forth more fully in the proposed Interim Order, the proposed DIP Facility contemplates a modification of the automatic stay established pursuant to Section 362 of the

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 13

Bankruptcy Code to permit the DIP Lender to take certain actions required or permitted by the Interim Order. More specifically, the Interim Order provides the DIP Lender with relief from the automatic stay to allow the DIP Lender, inter alia, to enforce certain remedies against the Collateral, without having to obtain any further order of the Bankruptcy Court. The Debtor submits that stay modification provisions of this sort are ordinary and usual features of post-petition debtor-in-possession financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated by the Interim and Final Orders.

### E.    Good Faith.

30.    Section 364(e) was designed to "encourage the extension of credit to Debtor" by allowing lenders to "rely on a bankruptcy court's authorization of the transaction." *In re EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir. 1982) (the purpose of Section 364(e) is "to overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge."). *See also In re North Atlantic Millwork Corp.*, 155 B.R. 271, 279 (Bankr. D. Mass. 1993) ("The purpose of section 364(e) is to allow good-faith lenders to rely upon conditions at the time they extend credit and to encourage lenders to lend to bankrupt entities.").

31.    The DIP Facility is and will be the result of good faith and arm's-length negotiations, with all parties represented by counsel. The Debtor believes that the terms of the

4849-2171-0124.2

**EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 14**

DIP Facility are fair and reasonable under the circumstances, and that DIP Lender is entitled to the benefits of Section 364(e) of the Bankruptcy Code.

### F.     Interim Approval of the DIP Facility.

32.    Bankruptcy Rule 4001(c)(2) provides that a final hearing on a motion to obtain credit pursuant to Section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

33.    Pursuant to Bankruptcy Rules 4001(c) and (d), the Debtor requests that the Court conduct an expedited interim hearing on the date hereof or as soon as practicable to consider entry of an Interim Order authorizing the Debtor's to borrow an amount sufficient to fund its operating expenses pending a Final Hearing on the DIP Facility.

34.    The Debtor also respectfully requests that the Court schedule the Final Hearing on this Motion in sufficient time for the Debtor to obtain a Final Order approving the DIP Facility no later than January 15, 2016, which is the last business day before the end of the Interim Period that the initial amount to be advanced under the DIP Facility is to cover. Such relief is necessary in order to maintain ongoing operations and avoid immediate and irreparable harm and prejudice to the Debtor's estate.

35.    No prior request for the relief sought herein has been made to this or any other Court.

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 15

# VI.
# REQUEST FOR FINAL HEARING

36. Pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests the Court to set a date for the Final Hearing.

WHEREFORE, the Debtor respectfully requests (a) entry of an order approving substantially in the form of the proposed Interim Order, (b) after a Final Hearing on the relief requested herein, entry of a Final Order approving the DIP Facility, substantially in the form that shall be filed with the Court; and (c) such other and further relief as is just.

Dated: December 15, 2015.

Respectfully submitted,

*/s/ Vickie L. Driver*
Vickie L. Driver, Esq.
State Bar No. 24026886
Emily S. Chou
State Bar No. 24006997
Lewis Brisbois Bisgaard & Smith, LLP
2100 Ross Avenue, Suite 2000
Dallas, Texas 75201
Phone: (214) 722-7100
Fax: (214) 722-7111
Email: vickie.driver@lewisbrisbois.com
Email: emily.chou@lewisbrisbois.com

**PROPOSED COUNSEL FOR THE DEBTOR**

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 16

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading was served upon the parties listed on the attached service list via facsimile or electronic mail, where available and otherwise via overnight delivery, on this 15th day of December, 2015.

/s/ *Vickie L. Driver*
Vickie L. Driver

4849-2171-0124.2

EMERGENCY MOTION OF THE DEBTOR SEEKING INTERIM AND FINAL
ORDERS AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING - PAGE 17